MATTHEW J. HAFEY (SBN 167122)
mhafey@nicolaidesllp.com
NICOLAIDES FINK THORPE
MICHAELIDES SULLIVAN LLP
777 South Figueroa Street, Suite 750
Los Angeles, CA 90017
Telephone: (213) 402-1245
Facsimile:  (213) 402-1246

Attorney for Plaintiff
MT. HAWLEY INSURANCE COMPANY

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MT. HAWLEY INSURANCE COMPANY, an Illinois corporation,<br><br>Plaintiff,<br><br>vs.<br><br>CLIMATE CONTROLLED CONSTRUCTION, INC., a California corporation,<br><br>Defendant. | Case No.:<br><br>**COMPLAINT FOR DECLARATORY RELIEF AND REIMBURSEMENT OF DEFENSE PAYMENTS** |

Plaintiff MT. HAWLEY INSURANCE COMPANY ("MT. HAWLEY") for its Complaint (hereinafter referred to as "Complaint") against the above-named Defendants, upon knowledge, information and belief, alleges as follows:

## INTRODUCTION

1.  This is an action by MT. HAWLEY pursuant to 28 U.S.C. §§ 2201 and 2202 for a declaratory judgment regarding its rights and obligations under Commercial General Liability Policy No. MGL0188776,

1

with effective dates of 06/21/2018 to 06/21/2019, with limits of liability of $1,000,000 per "Occurrence" and $2,000,000 in the aggregate (the "POLICY") issued defendant CLIMATE CONTROLLED CONSTRUCTION, INC., ("CCC"), a copy of which[1] is attached hereto as Exhibit "A" incorporated herein by this reference.

2. MT. HAWLEY is presently providing a defense to CCC, with regard to a lawsuit styled *Newport Meat Southern California, Inc. v. C & L Refrigeration Corporation*, Orange County Superior Court Case No. 30-2019-01054754 (the "*Newport Meat* Action") pursuant to a full and complete reservation of rights. In this action, MT. HAWLEY seeks a determination that:

- MT. HAWLEY never had a duty to defend CCC in the *Newport Meat* Action because the Continuous or Progressive Injury and Damage Exclusion in the MT. HAWLEY POLICY precludes coverage;
- MT. HAWLEY never had a duty to defend CCC in the *Newport Meat* Action because of the Contractors Professional Liability Exclusion in the MT. HAWLEY POLICY precludes coverage;
- MT. HAWLEY never had a duty to defend CCC in the *Newport Meat* Action because the Breach of Contract Exclusion in the MT. HAWLEY POLICY precludes coverage;
- Upon a determination by the Court that MT. HAWLEY has no duty to defend, it must then render a judgment in MT. HAWLEY's favor that MT. HAWLEY has no duty to indemnify CCC against any judgment rendered against CCC in the *Newport Meat* Action and that MT. HAWLEY has no duty to satisfy any such judgment to the extent it inures to the benefit of C & L REFRIGERATION or NEWPORT MEAT;

---

[1] The POLICY has been redacted to eliminate confidential rating and premium information.

COMPLAINT FOR DECLARATORY RELIEF AND REIMBURSEMENT OF DEFENSE PAYMENTS

- MT. HAWLEY is entitled to recoup any and all attorney's fees and costs it expended in CCC's behalf in defense of the *Newport Meat* Action.

## THE PARTIES, JURISDICTION AND VENUE

3. At all relevant times herein, MT. HAWLEY was and is a corporation organized under the laws of the State of Illinois whose principal place of business is located in Peoria, Illinois. MT. HAWLEY is an insurance company authorized to transact business in California on a non-admitted basis as an Excess and Surplus Lines carrier.

4. MT. HAWLEY is informed and believes and thereon alleges that Defendant CCC is a corporation organized and existing under the laws of the State of California whose principal place of business is located in the city of Chino, State of California. CCC is the Named Insured under the POLICY.

5. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1). There is complete diversity of citizenship between Plaintiff and Defendants and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs, in that the underlying *Newport Meat* Action involves claims by NEWPORT MEAT for property damage to its warehouse facility and personal property in an amount exceeding $3,962,053. Defense fees and costs of counsel appointed to represent CCC either are or are expected to be in excess of $75,000. An actual controversy within the meaning of 28 U.S.C. § 2201 exists between the parties.

6. Venue is proper pursuant to 28 U.S.C. § 1391, in that a substantial part of events giving rise to this action occurred in this district, the POLICY was delivered to CCC in this district, and all defendants maintain their principal place of business in this district.

/ / /

/ / /

**FACTUAL ALLEGATIONS – UNDERLYING ACTION**

7. In the operative First Amended Complaint in the *Newport Meat* Action (a true and correct copy of which is attached as Exhibit "B" and incorporated herein by this reference), NEWPORT MEAT alleged that on February 14, 2019 a roof collapse ("COLLAPSE") occurred at its facility located at 16619 Hale Avenue, Irvine, California (the "NEWPORT MEAT PREMISES").  NEWPORT MEAT alleged that the 2019 COLLAPSE caused property damage to the NEWPORT MEAT PREMISES, damage to NEWPORT MEAT's stock, tenant improvements, furniture, equipment, and other consequential loss, all in excess of $3,900,000.  The 2019 COLLAPSE occurred during and after a heavy rain.  The 2019 COLLAPSE occurred above a meat processing room in the Southeast corner of "Building B" at the NEWPORT MEAT PREMISES.

8. NEWPORT MEAT contends that or about June 10, 2014, NEWPORT MEATS entered into a contract with CCC (the "CONTRACT") whereby CCC was to remove and repair or replace certain glulam[2] beams supporting a section of the roof at the NEWPORT MEAT PREMISES (the "2014 PROJECT").  The 2014 PROJECT was done in an area more than eighty (80) feet away from the meat processing room which was the location of the 2019 COLLAPSE.  A true and correct copy of the June 10, 2014 CONTRACT is attached hereto as Exhibit "C" and is incorporated herein by this reference.

9. CCC completed its performance of the 2014 PROJECT in 2014.

10. NEWPORT MEAT contends that CCC performed the 2014 PROJECT without a building permit.  NEWPORT MEAT contends that had

---

[2] Glued laminated timber, commonly referred to as "glulam," is a type of structural engineered wood product constituted by layers of dimensional lumber bonded together with durable, moisture-resistant structural adhesives so that all of the grain runs parallel to the longitudinal axis.

CCC pulled a permit, the City of Irvine would have required a structural engineer to inspect the glulam beams both in the area of the repair and the adjacent area above the meat processing room and that such inspection would have revealed structural issues with the glulam beams which ultimately failed during the 2019 COLLAPSE.  NEWPORT MEAT contends that CCC's failure to pull a permit and retain a structural engineer was a proximate cause of the 2019 COLLAPSE.

11. NEWPORT MEAT also contends that CCC's scope of work for the 2014 PROJECT included recommending that the glulam beams in the area of its work and in the area of the meat processing room be inspected by a structural engineer, and that had such an inspection taken place, the structural weaknesses in the glulam beams which failed during the 2019 COLLAPSE would have been discovered.  NEWPORT MEAT contends that CCC's failure to make such recommendations was a proximate cause of the 2019 COLLAPSE.

12. NEWPORT MEAT does not contend that CCC performed any work at the NEWPORT MEAT PREMISES on or after June 21, 2018 and before the 2019 COLLAPSE on February 14, 2019 which was in any manner causally connected with the 2019 COLLAPSE.

13. On October 22, 2021, defendant C & L filed a "Roe" amendment to its Cross-complaint for equitable indemnity, contribution and declaratory relief, naming CCC as a cross-defendant in the place and stead of ROE 1. A true and correct copy of the Cross-complaint and Roe Amendment is attached as Exhibit "D" and incorporated herein by this reference.

14. MT. HAWLEY has been providing CCC with a defense to the *Newport Meat* Action, including the C & L CROSS-COMPLAINT, pursuant to a written reservation of rights.  MT. HAWLEY is continuing to provide that defense.

## THE MT. HAWLEY POLICY

15. The Insuring Agreement under Form CG 0001 0413, Coverage A, "Bodily Injury" and "Property Damage" Liability of the POLICY provides, in relevant part:

> **1. Insuring Agreement**
>
> **a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.**
>
> * * *
>
> **b. This insurance applies to "bodily injury" and "property damage" only if:**
>
> **(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";**
>
> **(2) The "bodily injury" or "property damage" occurs during the "policy period."**

16. The POLICY contains the following relevant definitions:

> **13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.**
>
> . . .
>
> **17. "Property damage" means:**
>
> **a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or**
>
> **b. Loss of use of tangible property that is not physically injured. All such loss of use shall be**

deemed to occur at the time of the "occurrence" that caused it.

. . .

21. "Your product":

    a. Means:

        (1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

            a. You;

            b. Others trading under your name; or

            c. A person or organization whose business or assets you have acquired; and

        (2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

    b. Includes:

        (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

        (2) The providing of or failure to provide warnings or instructions.

22. "Your work":

    a. Means:

        (1) Work or operations performed by you or on your behalf; and

        (2) Materials, parts or equipment furnished in connection with such work or operations.

    b. Includes:

        (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

        (2) The providing of or failure to provide warnings or instructions.

17. The POLICY contains the following endorsed Continuous or Progressive Injury and Damage Exclusion ("CPID EXCLUSION") on Form CGL366 (03/18), which provides as follows:

**CONTINUOUS OR PROGRESSIVE INJURY AND DAMAGE EXCLUSION**

**This endorsement modifies insurance provided under the following:**

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

1. **This insurance does not apply to any damages because of or related to "bodily injury," "property damage," or "personal and advertising injury":**

   a. **Which first existed, or are alleged to have first existed, prior to the inception date of this Policy; or**

   b. **Which are, or are alleged to be, in the process of taking place prior to the inception date of this Policy, even if the actual or alleged "bodily injury," "property damage," or "personal and advertising injury" continues during this policy period.**

2. **This insurance does not apply to any damages because of or related to "property damage," or "personal and advertising injury" which were caused, or are alleged to have been caused by any defect, deficiency, inadequacy or condition which first existed prior to the inception date of this policy.**

   **We shall have no duty to defend any insured against any loss, claim, "suit," or other proceeding alleging damages arising out of or related to "bodily injury," "property damage," or "personal and advertising injury" to which this endorsement applies.**

18. The POLICY contains the following endorsed Contractors Professional Liability Exclusion ("PROFESSIONAL LIABILITY EXCLUSION") on Form CG 22 79 04 13 which provides as follows:

/ / /

/ / /

8

COMPLAINT FOR DECLARATORY RELIEF AND REIMBURSEMENT OF DEFENSE PAYMENTS

**EXCLUSION – CONTRACTORS – PROFESSIONAL LIABILITY**

**This endorsement modifies insurance provided under the following:**

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

**The following exclusion is added to Paragraph 2. Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability and Paragraph 2. Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability:**

**1. This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of or failure to render any professional services by you or on your behalf, but only with respect to either or both of the following operations:**

    **a. Providing engineering, architectural or surveying services to others in your capacity as an engineer, architect or surveyor; and**

    **b. Providing, or hiring independent professionals to provide, engineering, architectural or surveying services in connection with construction work you perform.**

**This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved the rendering of or failure to render any professional services by you or on your behalf with respect to the operations described above.**

**2. Subject to Paragraph 3. below, professional services include:**

    **a. Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders, or drawings and specifications; and**

  **b. Supervisory or inspection activities performed as part of any related architectural or engineering activities.**

 **3. Professional services do not include services within construction means, methods, techniques, sequences and procedures employed by you in connection with your operations in your capacity as a construction contractor.**

19. The POLICY contains the following endorsed Breach of Contract Exclusion on Form CGL 350 (08/09) ("BREACH OF CONTRACT EXCLUSION") which provides as follows:

 **BREACH OF CONTRACT EXCLUSION**

 **This insurance does not apply, nor do we have a duty to defend any claim or "suit" for "bodily injury," "property damage," or "personal and advertising injury" arising directly or indirectly out of the following:**

 **a. Breach of express or implied contract;**

 **b. Breach of express or implied warranty;**

 **c. Fraud or misrepresentation regarding the formation, terms or performance of a contract; or**

 **d. Libel, slander or defamation arising out of or within the contractual relationship.**

20. The POLICY contains additional terms, conditions, endorsements and exclusions relevant to coverage for the 2019 COLLAPSE. MT. HAWLEY reserves the right to seek leave to amend this Complaint to allege the effect of such terms, conditions, endorsements and exclusions upon discovery of additional facts relating to their application.

/ / /

/ / /

/ / /

/ / /

/ / /

# FIRST CLAIM FOR RELIEF

## Declaratory Relief

## Duty to Defend as to CCC – Application of CPID EXCLUSION

## (Against All Defendants)

21. MT. HAWLEY repeats and incorporates by reference the allegations in paragraphs 1 through 20 of this Complaint.

22. A true and present controversy exists between MT. HAWLEY, on the one hand, and CCC, on the other, in that MT. HAWLEY contends that various terms, conditions, exclusions and endorsements of the POLICY limit or exclude coverage for CCC in the *Newport Meat* Action.

23. Among other things, NEWPORT MEAT contends that the damages it suffered as a result of the 2019 COLLAPSE were caused, or are alleged to have been caused, by a defect, deficiency, inadequacy or condition which first existed prior to the inception date of the MT. HAWLEY POLICY. The CPID EXCLUSION expressly precludes coverage for this risk.

24. Alternatively, to the extent that NEWPORT MEAT contends that it suffered "property damage" which first existed, or is alleged to have first existed, prior to the inception date of the MT. HAWLEY POLICY, or "property damage" which was, or was alleged to be, in the process of taking place prior to the inception date of the MT. HAWLEY POLICY, the CPID EXCLUSION expressly precludes coverage, even if the actual or alleged "property damage" continued into the policy period.

25. MT. HAWLEY contends that based on the application of the CPID EXCLUSION, MT. HAWLEY never had a duty to defend CCC against the operative complaint or the cross-complaint in the *Newport Meat* Action, and has no continuing duty to defend. MT. HAWLEY is informed and believes that Defendants contend otherwise.

/ / /

26. A judicial determination is necessary to determine the respective rights of the parties hereto pursuant to the terms, conditions, exclusions and endorsements of the POLICY. Upon such judicial declaration, MT. HAWLEY shall have the right to withdraw from the defense of the *Newport Meat* Action.

## SECOND CLAIM FOR RELIEF

### Declaratory Relief

### Duty to Defend as to CCC – Application of PROFESSIONAL LIABILITY EXCLUSION

### (Against All Defendants)

27. MT. HAWLEY repeats and incorporates by reference the allegations in paragraphs 1 through 20 of this Complaint.

28. A true and present controversy exists between MT. HAWLEY, on the one hand, and CCC, on the other, in that MT. HAWLEY contends that various terms, conditions, exclusions and endorsements of the POLICY limit or exclude coverage for CCC in the *Newport Meat* Action.

29. Among other things, NEWPORT MEAT contends that as part of its scope of work for the 2014 PROJECT, CCC should have, but did not, pull a permit for the 2014 PROJECT, which would have required inspection by the City of Irvine and a licensed structural engineer, such that structural weakness of the glulam beams in the area of the 2019 COLLAPSE would have been discovered and corrected in 2014, thus preventing the 2019 COLLAPSE.

30. Alternatively, NEWPORT MEAT contends that CCC should have, but did not, recommended that a licensed structural engineer inspect the glulam beams in the area where CCC was working and in the adjacent areas (including the location of the 2019 COLLAPSE), and that had an engineer conducted such inspection, certain defects or dangerous

conditions in the glulam beams would have been discovered and corrected in 2014, thus preventing the 2019 COLLAPSE.

31. The PROFESSIONAL LIABILITY EXCLUSION expressly precludes coverage for these risks. MT. HAWLEY contends that based on the application of the PROFESSIONAL LIABILITY EXCLUSION, MT. HAWLEY never had a duty to defend CCC against the operative complaint or the cross-complaint in the *Newport Meat* Action, and has no continuing duty to defend. MT. HAWLEY is informed and believes that Defendants contend otherwise.

32. A judicial determination is necessary to determine the respective rights of the parties hereto pursuant to the terms, conditions, exclusions and endorsements of the POLICY. Upon such judicial declaration, MT. HAWLEY shall have the right to withdraw from the defense of the *Newport Meat* Action.

## THIRD CLAIM FOR RELIEF

### Declaratory Relief

### Duty to Defend as to CCC – Application of BREACH OF CONTRACT EXCLUSION

### (Against All Defendants)

33. MT. HAWLEY repeats and incorporates by reference the allegations in paragraphs 1 through 20 of this Complaint.

34. A true and present controversy exists between MT. HAWLEY, on the one hand, and CCC, on the other, in that MT. HAWLEY contends that various terms, conditions, exclusions and endorsements of the POLICY limit or exclude coverage for CCC for the *Newport Meat* Action. Among other things, NEWPORT MEAT alleged that pursuant to the June, 2014 contract, as part of CCC's scope of work for the 2014 PROJECT, CCC should have, but did not, pulled a permit, which would have required City inspection

and/or inspection by a licensed structural engineer of the glulam beams in the area where CCC was working and in the adjacent areas (including the location of the 2019 COLLAPSE). Alternatively, CCC should have recommended that a structural engineer inspect the glulam beams in the area where CCC was working and in the adjacent areas (including the location of the 2019 COLLAPSE). NEWPORT MEAT contends that had an engineer conducted such inspection, certain defects or dangerous conditions in the glulam beams would have been discovered and corrected in 2014, thus preventing the 2019 COLLAPSE.

35. MT. HAWLEY contends that based on the application of the BREACH OF CONTRACT EXCLUSION, MT. HAWLEY never had a duty to defend CCC against the operative complaint or the cross-complaint in the *Newport Meat* Action, and has no continuing duty defend. MT. HAWLEY is informed and believes that Defendants contend otherwise.

36. A judicial determination is necessary to determine the respective rights of the parties hereto pursuant to the terms, conditions, exclusions and endorsements of the POLICY. Upon such judicial declaration, MT. HAWLEY shall have the right to withdraw from the defense of the *Newport Meat* Action, including the taking of any appeals from the JUDGMENT.

### FOURTH CLAIM FOR RELIEF
### Declaratory Relief
### Duty to Defend as to CCC – Other Terms and Conditions
### (Against All Defendants)

37. MT. HAWLEY repeats and incorporates by reference the allegations in paragraphs 1 through 36 of this Complaint.

38. A true and present controversy exists between MT. HAWLEY, on the one hand, and CCC, on the other, in that MT. HAWLEY contends that

various other terms, conditions, exclusions and endorsements of the POLICY limit or exclude coverage for CCC in the *Newport Meat* Action.

39. MT. HAWLEY contends that based on the application of other terms and conditions of the POLICY, according to proof, MT. HAWLEY never had a duty to defend CCC against the operative complaint or the cross-complaint in the *Newport Meat* Action, and has no continuing duty to defend. MT. HAWLEY is informed and believes that Defendants contend otherwise.

40. A judicial determination is necessary to determine the respective rights of the parties hereto pursuant to the terms, conditions, exclusions and endorsements of the POLICY. Upon such judicial declaration, MT. HAWLEY shall have the right to withdraw from the defense of the *Newport Meat* Action.

## FIFTH CLAIM FOR RELIEF

### Declaratory Relief

### Duty to Indemnify as to CCC

### (Against All Defendants)

41. MT. HAWLEY repeats and incorporates by reference the allegations in paragraphs 1 through 40, inclusive, of this Complaint.

42. A true and present controversy exists between MT. HAWLEY, on the one hand, and Defendants, on the other, in that MT. HAWLEY contends that upon a determination by the Court that MT. HAWLEY has no and never had a duty to defend, MT. HAWLEY is entitled to a declaration that it also had no duty to indemnify CCC against the damages alleged in the operative complaint and cross-complaint of the *Newport Meat* Action. MT. HAWLEY is informed and believes that Defendants contend otherwise.

43. Additionally, a true and present controversy exists between MT. HAWLEY, on the one hand, and Defendants NEWPORT MEAT and C & L

REFRIGERATION on the other, in that if there is a final, non-appealable judgment against CCC in the *Newport Meat* Action, NEWPORT MEAT or C & L REFRIGERATION would potentially have a right of direct action against MT. HAWLEY pursuant to Insurance Code section 11580(b).  MT. HAWLEY is therefore entitled to a declaratory judgment binding NEWPORT MEAT or C & L REFRIGERATION to the court's coverage determination in this action.  MT. HAWLEY is informed and believes that Defendants contend otherwise.

44.   A judicial determination is necessary to determine the respective rights of the parties hereto pursuant to the terms, conditions, exclusions and endorsements of the POLICY, and in particular that upon a determination by the Court that MT. HAWLEY has no and never had a duty to defend, MT. HAWLEY is entitled to a declaration that it also had no duty to pay money to CCC, NEWPORT MEAT or C & L REFRIGERATION.

## SIXTH CLAIM FOR RELIEF

### Declaratory Relief

### (Recoupment against CCC)

45.   MT. HAWLEY repeats and incorporates by reference the allegations in paragraphs 1 through 44 of this Complaint.

46.   A true and present controversy exists between MT. HAWLEY, on the one hand, and CCC on the other, in that MT. HAWLEY contends that upon a declaration from the Court that it never had a duty to defend CCC against the *Newport Meat* Action, MT. HAWLEY is entitled to recover from CCC the attorney's fees and costs expended on CCC's behalf from the date of its reservation of rights forward.  MT. HAWLEY is informed and believes that CCC contends otherwise.

47.   A judicial determination is necessary to determine the respective rights of the parties hereto pursuant to the terms, conditions, exclusions and endorsements of the POLICY.

48. Upon such determination, MT. HAWLEY is entitled to such recoupment from CCC.

WHEREFORE, Plaintiff MT. HAWLEY requests that the Court enter judgment in its favor:

### On The First Claim for Relief Of The Complaint

A. That the terms, conditions, exclusions and endorsements of the POLICY, including the CPID EXCLUSION, bar coverage for CCC such that MT. HAWLEY never had a duty to defend against the operative complaint, or cross-complaint, in the *Newport Meat* Action;

B. That upon such determination, MT. HAWLEY shall be entitled to withdraw from the defense of the *Newport Meat* Action;

### On The Second Claim for Relief Of The Complaint

C. That the terms, conditions, exclusions and endorsements of the POLICY, including the PROFESSIONAL LIABILITY EXCLUSION, bar coverage for CCC such that MT. HAWLEY never had a duty to defend against the operative complaint, or cross-complaint, in the *Newport Meat* Action;

D. That upon such determination, MT. HAWLEY shall be entitled to withdraw from the defense of the *Newport Meat* Action;

### On The Third Claim for Relief Of The Complaint

E. That the terms, conditions, exclusions and endorsements of the POLICY, including the BREACH OF CONTRACT EXCLUSION, bar coverage for CCC such that MT. HAWLEY never had a duty to defend against the operative complaint, or cross-complaint, in the *Newport Meat* Action;

F. That upon such determination, MT. HAWLEY shall be entitled to withdraw from the defense of the *Newport Meat* Action;

/ / /

**On The Fourth Claim for Relief Of The Complaint**

G. That other terms, conditions, exclusions and endorsements of the POLICY bar coverage for CCC such that MT. HAWLEY never had a duty to defend against the operative complaint, or cross-complaint, in the *Newport Meat* Action;

H. That upon such determination, MT. HAWLEY shall be entitled to withdraw from the defense of the *Newport Meat* Action;

**On The Fifth Claim for Relief Of The Complaint**

I. That upon a determination by the Court that MT. HAWLEY has no duty to defend CCC against the operative complaint or cross-complaint in the *Newport Meat* Action, the Court must also declare that MT. HAWLEY has no duty to indemnify CCC against any judgment that may be rendered against it in the *Newport Meat* Action, and that such declaration be binding upon NEWPORT MEAT and C & L REFRIGERATION

**On The Sixth Claim for Relief Of The Complaint**

J. For a judicial declaration that MT. HAWLEY is entitled to recoupment or reimbursement from CCC of attorney's fees and costs expended in CCC's defense of the *Newport Meat* Action from the date of MT. HAWLEY's reservation of rights forward.

**On All Claims For Relief Of The Complaint**

K. For interest and other recoverable costs.

L. Awarding MT. HAWLEY such additional declaratory and other relief as shall be found to be appropriate under the circumstances.

Dated: August 17, 2023

NICOLAIDES FINK THORPE MICHAELIDES SULLIVAN LLP

By: _____
Matthew J. Hafey
Attorney for Plaintiff MT. HAWLEY INSURANCE COMPANY

COMPLAINT FOR DECLARATORY RELIEF AND REIMBURSEMENT OF DEFENSE PAYMENTS

## DEMAND FOR JURY TRIAL

Plaintiff herein demands a trial by jury.

Dated: August 17, 2023

NICOLAIDES FINK THORPE
MICHAELIDES SULLIVAN LLP

By: _____
Matthew J. Hafey
Attorney for Plaintiff MT. HAWLEY
INSURANCE COMPANY